**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| **VERNA IP HOLDINGS, LLC,** | |
| Plaintiff, | C.A. No. 6:21-cv-00422-ADA |
| v. | **JURY TRIAL DEMANDED** |
| **ALERT MEDIA, INC.,** | |
| Defendant. | |

**ALERT MEDIA'S OPENING CLAIM CONSTRUCTION BRIEF**

# **TABLE OF CONTENTS**

I.   NATURE AND STAGE OF THE PROCEEDING ................................................................. 1

II.  TECHNOLOGY OVERVIEW AND CLAIMS OF THE '938 PATENT ............................. 1

III. LEGAL STANDARDS .......................................................................................................... 4

   A.  Claim Construction ......................................................................................................... 4

   B.  Preamble as a Limitation ................................................................................................. 4

IV.  PROPOSED CONSTRUCTIONS OF CLAIM TERMS ........................................................ 5

   A.  "automatically providing instant emergency voice alerts automatically to wireless hand held device users in a specified region" (claims 1, 11) / "automatically provide instant voice alerts to wireless hand held device users in a specified region" (Claim 18) ................................. 5

      1.  The preambles of claims 1, 11, and 18 are limiting. ............................................... 6

      2.  As limitations, the preambles require automatically, without human interaction, performing the steps recited in the claim bodies. ........................................................... 11

   B.  "transmitting [/ transmit] said digitized voice alert through specific towers of a cellular communications network in said specified region for distribution of an automatic emergency announcement about said emergency situation provided by said digitized voice alert to at least one wireless hand held device in communication with said specific towers of said cellular communications network [in] said specified region" (claims 1, 11, 18) ...................................... 12

V.  CONCLUSION ..................................................................................................................... 14

ii

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com*,
   289 F.3d 801 (Fed. Cir. 2002) ................................................................................................. 4, 6

*Data Engine Technologies LLC v. Google LLC*,
   10 F.4th 1375 (Fed. Cir. 2021) ...................................................................................................... 8

*Deere & Co. v. Bush Hog*,
   LLC, 703 F.3d 1349 (Fed. Cir. 2012) ........................................................................................... 9

*Fenner Invs., Ltd. v. Cellco P'ship*,
   778 F.3d 1320 (Fed. Cir. 2015) .................................................................................................... 4

*GE Co. v. Nintendo Co., Ltd.*,
   179 F.3d 1350 (Fed. Cir. 1999) .................................................................................................... 9

*MBO Labs., Inc. v. Becton, Dickinson & Co.*,
   474 F.3d 1323 (Fed. Cir. 2007) ................................................................................................. 8, 9

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
   521 F.3d 1351 (Fed. Cir. 2008) .................................................................................................... 5

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) .................................................................................................... 4

*Poly-Am., L.P. v. GSE Lining Tech., Inc.*,
   383 F.3d 1303 (Fed. Cir. 2004) ................................................................................................. 9, 10

*Proveris Sci. Corp. v. Innovasystems, Inc.*,
   739 F.3d 1367 (Fed. Cir. 2014) .................................................................................................... 9

*SpeedTrack, Inc. v. Amazon.com, Inc.*,
   998 F.3d 1373 (Fed. Cir. 2021) .................................................................................................... 8

*Vitronics Corp. v. Conceptronic, Inc.*,
   90 F.3d 1576 (Fed. Cir. 1996) ...................................................................................................... 4

# **TABLE OF EXHIBITS**

Exhibit A  U.S. Patent No. 8,265,938

Exhibit B  Infringement Contentions 8/13/2021

Exhibit C  Correspondence Regarding Claim Construction

Exhibit D  Claim Construction Chart

Exhibit E  File History of the '938 Patent

**I.     NATURE AND STAGE OF THE PROCEEDING**

Plaintiff Verna IP Holdings, LLC accuses Defendant Alert Media, Inc. of infringing claims 1–4, 6, 11–13, and 16–18 of U.S. Patent No. 8,265,938 (Ex. A, the "'938 Patent"). (Dkt. 1; Ex. B (infringement contentions).) Pursuant to the parties' Joint Motion for Entry of Agreed Scheduling Order (Dkt. 24) and the Court's Standing Order Governing Proceedings – Patent Case, the parties have exchanged claim terms for construction, offered proposed claim constructions of those terms, disclosed that they would offer no extrinsic evidence, and met and conferred on November 29, 2021, to narrow terms in dispute and exchange a revised list of terms and constructions. (*See* Ex. C (email chain regarding the parties' claim construction process).)

Attached to this motion as Exhibit D is a chart containing all of the parties' proposed terms and constructions. All of those charted terms are in dispute.

**II.    TECHNOLOGY OVERVIEW AND CLAIMS OF THE '938 PATENT**

The '938 Patent describes "providing instant/real-time voice alerts automatically to remote electronic devices." ('938 Patent at Abstract; *see also, e.g., id.* at 1:16–25, 2:4–7, 2:45–50 (similar).) The background of the '938 Patent states that "elderly parents" and unattended "homes," "offices, buildings, and other facilities require constant monitoring, particularly during times when no one is available on-site," and notes that "many emergency situations are such that immediate and quick notification to the public of such emergencies will save lives and resources. Accordingly, a need exists for an improved and efficient approach for transmitting or broadcasting instant voice alerts to remote electronic devices automatically during times of emergencies or as a part of security monitoring systems." (*Id.* at 1:29–43.)

The '938 Patent's applicants recognized that instant emergency broadcasting systems were already well known in the art. One existing emergency broadcasting system (the FCC's "'PLAN' Personal Localized Alerting Network") was already used as a network "for the transmission of

1

local emergency services, Amber alerts, Presidential messages, government notices, etc." and was cited as prior art to the '938 Patent. (*Id.* at Cover, 19:17–20.) The applicants noted that PLAN "sends text only," a purported disadvantage for "those who are unable to look at their instant text alert such as when driving" or "those that are without a phone, who are reading the TEXT on their computers, and so forth." (*Id.* at 14:23–34.) The applicants suggested "converting a text message indicative of the emergency situation into a digitized voice alert" in multiple languages so "users can hear the message without doing anything." (*Id.* at 14:25–57; *see also, e.g., id.* at Title, Abstract.) This claimed idea of the '938 Patent, "if adapted to PLAN, would allow for actual voice alerts . . . to be pushed through to mobile devices in communication with, for example, [a] network." (*Id.* at 27:18–23.) The supposed invention of the '938 Patent, in other words, is simply adding automatic multilingual voice alerts to PLAN. (*Id.* at 14:25–57, 27:18–27.)

The independent claims of the '938 Patent all recite essentially the same limitations in the same order (i.e., as a method (Claim 1), a system containing code (Claim 11), and a *Beauregard* claim (Claim 18)) for automatically providing instant emergency voice alerts to electronic devices in a specific region. Claim 1 is exemplary:

> 1. A method for automatically providing instant emergency voice alerts automatically to wireless hand held device users in a specified region, said method comprising:
>
> determining an emergency situation affecting a specified region and requiring emergency notification of said emergency situation to wireless hand held device users in said specified region;
>
> generating and converting a text message indicative of said emergency situation into a digitized voice alert;
>
> converting said digitized voice alert into more than one language from among a plurality of languages for broadcast of said digitized voice alert in consecutively different languages through said at least one wireless hand held device; and

> transmitting said digitized voice alert through specific towers of a cellular communications network in said specified region for distribution of an automatic emergency announcement about said emergency situation provided by said digitized voice alert to at least one wireless hand held device in communication with said specific towers of said cellular communications network in said specified region.

(*Id.* at Cl. 1; *see also id.* at cls. 11, 18 (similar).) Figure 6 (below) depicts the claimed steps as "method 440." (*Id.* at 4:21–25, 14:14–15:2.) Figure 9 (below) illustrates the claimed "system 494" for executing the claimed "method 440" (*id.* at 4:33–36, 16:20–58), and Figure 12 (below) shows the claimed "processor-readable medium 494" for storing code to perform the claimed "method 440" (*id.* at 4:48–53, 17:26–58).



'938 Patent at FIGs. 6 (left, red annotation),
9 (upper right, red annotation), 12 (lower right, red annotation)

## III. LEGAL STANDARDS

### A. Claim Construction

It is a "bedrock principle" of patent law that the claims of a patent define the invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005). Claim terms should generally be given their "ordinary and customary meaning" in light of the patent's intrinsic record, i.e., the language of the claims, the specification, and the patent's prosecution history. *Id.* at 1312, 1316–17. Claim terms "are not construed in the abstract," but as would have been understood by a person of ordinary skill in the field of the invention after reading the intrinsic record. *Fenner Invs., Ltd. v. Cellco P'ship*, 778 F.3d 1320, 1322–23 (Fed. Cir. 2015). The specification is "always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). The prosecution history can inform the meaning of a claim term by "demonstrating how the inventor understood the invention." *Phillips*, 415 F.3d at 1317.

### B. Preamble as a Limitation

"Whether to treat a preamble as a limitation is a determination resolved only on review of the entire patent to gain an understanding of what the inventors actually invented and intended to encompass by the claim." *Catalina Mktg. Int'l, Inc. v. Coolsavings.com*, 289 F.3d 801, 808 (Fed. Cir. 2002) (quotations omitted). Accordingly, "a preamble limits the invention . . . if it is necessary to give life, meaning, and vitality to the claim." *Id.* (quotations omitted). "No litmus test defines when a preamble limits claim scope," but the Federal Circuit has identified "guideposts" for determining "the preamble's effect on claim scope." *Id.* The two relevant guideposts here are (1) "clear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art"; and (2) "reciting additional structure or steps underscored as important by the specification" such that the preamble is used to "define, in part, the claimed invention." *Id.*

## IV.     PROPOSED CONSTRUCTIONS OF CLAIM TERMS

The preamble and final limitation of each independent claim of the '938 Patent (claims 1, 11, and 18) require construction. Alert Media proposes that the preamble is limiting and its plain language requires preforming each claimed step automatically, without human intervention. The final "transmitting / transmit" step of the independent claims must also be construed because the parties dispute the ordinary meaning of that step. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) ("When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it.").

### A.     "automatically providing instant emergency voice alerts automatically to wireless hand held device users in a specified region" (claims 1, 11) / "automatically provide instant voice alerts to wireless hand held device users in a specified region" (Claim 18)

| Alert Media's Proposed Construction | Verna's Proposed Construction |
|---|---|
| **Claims 1 and 11.** The preamble is limiting, requiring: automatically providing instant emergency voice alerts to wireless hand held device users in a specified region by automatically, without human interaction, performing the steps of determining, generating and converting, converting, and transmitting<br><br>**Claim 18.** The preamble is limiting, requiring: automatically provide instant voice alerts to wireless hand held device users in a specified region by having the code cause a processor to, without human interaction, determine, generate and convert, convert, and transmit | The preamble is not limiting. |

The preambles of all three independent claims of the '938 Patent recite *automatically* providing instant voice alerts to wireless hand held device users in a specified region. Claims 1 and 11 further require "emergency" voice alerts and, for emphasis, recite "automatically" twice. Claim 1 is a method claim, and its body recites the steps of "determining," "generating and

5

converting," "converting," and "transmitting." Claim 11 recites those steps as a system containing computer code, and Claim 18 recites those steps as a *Beauregard* claim. The preamble limits each respective claim for the same reasons explained below.

### 1. The preambles of claims 1, 11, and 18 are limiting.

Two of the Federal Circuit's "guideposts" are present to indicate that the preambles of claims 1, 11, and 18 limit the scope of those claims. *See Catalina*, 289 F.3d at 808 (identifying guideposts). The first guidepost is clear reliance on the preamble during prosecution to distinguish the prior art, which occurred here when the applicant relied on automation of the claimed methods and systems to distinguish claims 1 and 11 from the prior art during prosecution of the '938 Patent. The preamble of Claim 18 originally recited such automation. The second guidepost is the recitation of structure and steps underscored as important by the patent specification, which is the case here because the '938 Patent's specification underscores automatically performing each limitation in the body of the claims as an essential feature of the asserted invention.

#### a. The applicants relied on the preambles during prosecution to distinguish the claimed invention from the prior art.

The preamble is limiting here because the prosecution history of the '938 Patent includes a "clear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art" and "such reliance indicates use of the preamble to define, in part, the claimed invention." *Id.* During prosecution of the '938 Patent, the Examiner rejected claims 1 and 11, as originally recited in the application, as anticipated or obvious in light of five different prior art references providing text or text-to-speech notifications. (Ex. E at 102.)[1] The applicants responded by amending, *inter alia*, the preamble of claims 1 and 11 to recite ***automatically*** providing instant emergency voice alerts ***automatically*** to wireless hand held device users in a specified region:

---

[1] Claim 12 of the '938 Patent's application was issued as Claim 11, and Claim 20 issued as Claim 18. (Ex. E at 145.)

6

> 1. (Currently Amended) A method for <u>automatically providing instant emergency</u> ~~providing instant~~ voice alerts <u>automatically</u> to <u>wireless hand held device users in a specified region</u> ~~remote electronic devices~~, said method comprising:
>
> 12. (Currently Amended) A system for <u>automatically</u> providing instant emergency voice alerts automatically to <u>wireless hand held device users in a specified region</u> ~~remote electronic devices~~, said system comprising:

(*Id.* at 109–11.)[2] And the applicants argued that these claim amendments "overcome the aforementioned rejections." (*Id.* at 116.) The applicants, in other words, relied directly on these amendments to distinguish the claimed invention from the five prior art references.

After a subsequent Examiner-Initiated Interview, the applicants further amended their claims upon the Examiner's suggestion to "incorporate the subject matter of claims 7 and 19" into the independent claims (i.e., "converting said digitized voice alert into more than one language"). (*Id.* at 110, 113, 114, 124.) The Examiner then withdrew the rejections and allowed the claims, explaining that "[t]he closest prior art on record is Kirchmeier et al. (U.S. Patent No. 7,664,233)" and it "teaches an emergency notification system that determines if there is an emergency situation in a particular geographic area," "generates a voice alert using text-to-speech synthesis," "and transmits the voice alert to the cell phones of members identified in that geographic area." (*Id.* at 126–27.) But "[n]either Kirchmeier nor the other prior art on record teach a method, system or processor-readable medium with code for ***automatically*** providing instant emergency providing [sic] instant voice alerts ***automatically*** to wireless hand held device users in a specified region" or claim "converting" those alerts into multiple languages. (*Id.* (emphasis added).)

---

[2] The preamble of Claim 18 already recited "automatically" providing alerts, but was further amended to recite "wireless hand held device users in a specified region." (Ex. E at 114.)

7

The applicant's initial claim amendments are a clear and unmistakable reliance on the preambles of claims 1 and 11 to distinguish the claims from the prior art. It "changes nothing" that the applicant amended the claims in other ways because "[a]n applicant's argument that a prior art reference is distinguishable on a particular ground can serve as a disclaimer of claim scope even if the applicant distinguishes the reference on other grounds as well." *SpeedTrack, Inc. v. Amazon.com, Inc.*, 998 F.3d 1373, 1380 (Fed. Cir. 2021) (quotations omitted). Because claims 1, 11, and 18 recite "automatically" providing alerts only in their preambles, the applicant plainly relied upon the preamble as distinguishing the claims from the prior art. *MBO Labs., Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1330 (Fed. Cir. 2007) ("Prosecution arguments like this one which draw distinctions between the patented invention and the prior art are useful for determining whether the patentee intended to surrender territory, since they indicate in the inventor's own words what the invention is not.").

Moreover, Verna previously argued in its response to Alert Media's Section 101 Motion to Dismiss that the preamble is part of the "focus of the claims." (*See* Dkt. 16 at 4 (arguing the focus is "automatic digitized conversion of text messages to voice alerts for transmission to remote electronic devices").) But, as the Federal Circuit recently held, "emphasis on this preamble term in support of patent eligibility" is akin to clear reliance on the preamble "to distinguish prior art during prosecution," and ultimately evidences that the preamble is limiting. *Data Engine Technologies LLC v. Google LLC*, 10 F.4th 1375, 1381 (Fed. Cir. 2021). Any assertion by Verna that the preamble is not limiting, therefore, is nothing more than "efforts to twist claims, like a nose of wax," and should not be entertained. *Id.* (quotations omitted).

Based on the applicants' reliance and Examiner's agreement during prosecution, it is clear that the preamble of claims 1, 11, and 18 limits its respective claims as it was used to define, in

8

part, the claimed invention. "It is therefore appropriate to construe the claims so as to ensure that they, too, require that feature." *MBO Labs.*, 474 F.3d at 1330.

### b. The preambles recite structure or steps underscored as important by the specification.

The preambles also limit claims 1, 11, and 18 because they "disclose[] a fundamental characteristic of the claimed invention that is properly construed as a limitation of the claim itself." *Poly-Am., L.P. v. GSE Lining Tech., Inc.*, 383 F.3d 1303, 1310 (Fed. Cir. 2004) (concluding "blown-film" preamble was limiting where patent was "replete with references to the invention as a 'blownfilm' liner"); *see also Proveris Sci. Corp. v. Innovasystems, Inc.*, 739 F.3d 1367, 1373 (Fed. Cir. 2014) (limiting preamble where it was "the only reference in any independent claim" to inventive concept described in specification); *Deere & Co. v. Bush Hog*, LLC, 703 F.3d 1349, 1358 (Fed. Cir. 2012) (concluding "rotary cutting deck" preamble was limiting because specification repeatedly and consistently referred to invention as deck for rotary cutter).

The '938 Patent's specification makes clear that the inventor was working on a particular "need" missing from prior art emergency alert systems: providing "***instant*** voice alerts to remote electronic devices automatically during times of emergencies or as a part of security monitoring systems." ('938 Patent at 1:40–44 (emphasis added).) And the claims of the '938 Patent are directed to overcoming problems associated with prior emergency systems: "with the approach of the disclosed embodiments, users can hear the [alert] without doing anything." (*Id.* at 14:25–29.) In these scenarios, the Federal Circuit has held the preamble "does not merely state a purpose or intended use for the claimed structure. Rather, those words do give 'life and meaning' and provide further positive limitations to the invention claimed." *GE Co. v. Nintendo Co., Ltd.*, 179 F.3d 1350, 1362 (Fed. Cir. 1999) (limiting claim scope to preamble's "raster scanned display device" in view of specification's focus on the prior art problem of displaying data on a raster scan display device)

9

(quoting *Corning Glass Works v. Sumitomo Elec. USA, Inc.*, 868 F.2d 1251, 1257 (Fed. Cir. 1989) (limiting claim scope to preamble's "optical waveguides" in view of specification's focus on the prior art problem of effective optical communication systems)).

The '938 Patent's specification, furthermore, is replete with references to "automatically" performing each limitation of the claim body. The Abstract describes automation as a key feature of the claimed invention, with each step to be performed automatically by computer equipment:

> Methods, systems and processor-readable media for providing instant/real-time voice alerts **automatically** to remote electronic devices. An activity can be **detected utilizing one or more sensors**. A text message indicative of the activity **can be generated and converted into a digitized voice alert**. The activity can also be a live utterance (e.g., a live announcement), which can then be **instantly converted into a digitized voice alert for automatic delivery** in a selected series of languages following the base language (e.g., English). The combined digitized voice alert can then be **instantly transmitted through a network for broadcast** of consecutive alerts (e.g., English followed by Spanish followed by Vietnamese, etc.) to one or more remote electronic devices that communicate with the network **for an automatic audio announcement** of the digitized voice alert through the one or more remote electronic devices.

('938 Patent at Abstract (emphasis added).) Allegedly unlike the prior art, the claimed "method provides for an ***instant automatic*** delivery of a voice alert to one or more remote electronic devices," and "with the approach of the disclosed embodiments, users can hear the message without doing anything." (*Id.* at 14:14–43.)

That the preamble is "used repeatedly to describe the preferred embodiments" is a strong indication that the preamble limits the claims. *Poly-Am.*, 383 F.3d at 1310. All claimed embodiments, in fact, are described as "***automatically*** providing emergency instant voice alerts to wireless hand held devices in a specified region." ('938 Patent at 4:21–25, 4:33–36, 4:48–53, 14:14–15:2, 16:20–58, 17:26–58, FIGs. 6, 9, 12 (emphasis added).) This usage is consistent throughout the '938 Patent, which makes over 70 references to "automatically" providing the

instant voice alerts. (*See generally id.*)

The '938 Patent also describes performing each step "automatically" as previously done in the prior art. The step of "determining an emergency situation" is described as automatically performed by, for example, using "one or more sensors." ('938 Patent at Abstract.) And, rather than humans, prior art "text-to-speech engine" software and emergency notification systems like PLAN are used to perform all the claimed steps of "determining," "generating," "converting," and "transmitting" a voice alert to remote electronic devices. (*Id.* at 10:38–11:33, 27:1–28:12.) Any manual activity would defeat the stated purposes of providing "immediate and quick notification to the public" of emergencies and "hear[ing] the [notification] without doing anything." (*Id.* at 1:37–39, 14:25–29.) Thus, the preambles of claims 1, 11, and 18 are limiting.

### 2. As limitations, the preambles require automatically, without human interaction, performing the steps recited in the claim bodies.

The plain and ordinary meaning of the preambles require that each step recited in the bodies of claims 1, 11, and 18 be performed automatically, without human interaction, to provide instant alerts. This is consistent with the specification, which describes providing instant alerts automatically "without doing anything" as a benefit of the disclosed embodiments and relies on using conventional, prior art computer equipment for performing each claimed step. (*Id.* at 10:38–11:33, 14:14–43, 27:1–28:12.)

For claims 1 and 11 particularly, the properly construed preamble means "automatically providing instant emergency voice alerts to wireless hand held device users in a specified region by automatically, without human interaction, performing the steps of determining, generating and converting, converting, and transmitting." And for Claim 18, the preamble means "automatically provide instant voice alerts to wireless hand held device users in a specified region by having the code cause a processor to, without human interaction, determine, generate and convert, convert,

11

and transmit."

> **B.** **"transmitting [/ transmit] said digitized voice alert through specific towers of a cellular communications network in said specified region for distribution of an automatic emergency announcement about said emergency situation provided by said digitized voice alert to at least one wireless hand held device in communication with said specific towers of said cellular communications network [in] said specified region" (claims 1, 11, 18)**

| Alert Media's Proposed Construction | Verna's Proposed Construction |
|---|---|
| transmitting [/ transmit] said digitized voice alert providing an automatic emergency announcement about said emergency situation to at least one wireless hand held device by targeting cellular towers only in the specified region | plain and ordinary meaning |

After automatically converting a text message to a digitized voice alert, the final limitation of claims 1, 11, and 18 require the claimed methods, systems, and processor-readable media to "transmit" the voice alert through specific cell towers in a specific region to electronic devices. (*See* '938 Patent at cls. 1, 11, 18.) Verna has not identified any particular issue with Alert Media's proposed construction of this term, yet it opposes Alert Media's construction. Nevertheless, Alert Media's proposed construction should be adopted because it clarifies a confusing limitation. The Court should adopt Alert Media's proposed construction to aid the jury in understanding this term and resolve the dispute between the parties.

As the relevant portion of claims 1, 11, and 18 show, a digitized voice alert providing an automatic emergency announcement about an emergency situation is transmitted to at least one wireless hand held device by targeting cellular towers only in the specified region:

> **transmitting said digitized voice alert through specific towers of a cellular communications network in said specified region** for distribution of an automatic emergency announcement about said emergency situation provided by said digitized voice alert **to at least one wireless hand held device in communication with said specific towers of said cellular communications network in said specified region**

12

('938 Patent at Cl. 1; *see also id.* at cls. 11, 18 (similar).) This is the mechanism that the claims require to ensure that the alerts are received only in the affected area. Using other means would result in an Austinite, traveling in New York, receiving alerts for an emergency affecting only Austin. Put differently, this limitation requires "transmitting" the digitized voice alert through only regional cell towers, and that distributed digitized voice alert provides "an automatic emergency announcement." Alert Media's proposed construction captures this plain and ordinary meaning.

Alert Media's construction is consistent with the plain and ordinary meaning in light of the intrinsic record. The '938 Patent strongly suggests an identity between "transmitting" a voice alert through cell towers in a specific region and geographically targeted voice alerts. The specification primarily describes two embodiments of "transmitting" a voice alert, both defined by a limited geographic scope.[3] The first implementation is on "a WiFi network" or similar network inherently covering only a "limited geographical area . . . ." (*Id.* at 19:9–16.) The second implementation is on "a cellular communications network" as recited in the independent claims. (*Id.* at 18:65–19:9.)

Although a cell network can provide "coverage over a wide geographic area," the specification expressly limits the cell towers and area to which a digitized voice alert is transmitted. (*Id.* at 18:65–19:9, 27:1–27.) The specification only considers specific cell towers as "utilized in the context of the [prior art] PLAN system discussed above." (*Id.* at 27:1–3.) "PLAN authenticates the alert, verifies that the sender is authorized, and then PLAN sends the alert to participating wireless carriers." (*Id.* at 27:5–7.) Participating wireless carriers instantly transmit those messages by "push[ing] the alerts from, for example, cell towers to mobile telephones and other mobile electronic devices in the affected area." (*Id.* at 27:7–10.) Users then receive "alerts appear[ing] similar to text messages on [their] mobile devices." (*Id.* at 27:10–11.)

---

[3] Other references to "transmitting" in the specification mirror the claim language with no further detail. (*See generally id.*)

The patent describes the claimed "transmitting" step as only a simple addition to PLAN to send voice alerts rather than "text-like messages"—transmission of that data is the same. (*Id.* at 14:25–43, 27:18–27 ("The approach described herein, however, if adapted to PLAN, would allow for actual voice alerts (e.g., digitized voice alert from the President, which the public would recognize) to be pushed through to mobile devices in communication with, for example, [a] network.").) And the digitized voice alerts, like PLAN's "'text-like messages'[,] are geographically targeted. For example, a customer living in downtown New York would not receive a threat alert if they happen to be in Chicago when the alert is sent. Similarly, someone visiting downtown New York from Chicago on that same day would receive the alert." (*Id.* at 27:11–16.)

The file history corroborates this geographically-limited understanding of the "transmitting" limitation. The applicants originally claimed transmission through "a network for broadcast to at least one remote electronic device that communicates with said network," but subsequently replaced that limitation with "specific towers of a cellular communications network in said specified region . . . to at least one wireless hand held device in communication with said specific towers of said cellular communications network in said specified region." (Ex. E at 109, 112, 114, 115.) The applicants clearly surrendered the broad "network" originally claimed to the much more limited network of "specific towers" of a cell network **only** in a specific region. The claims should be construed to give effect to the intended scope. Thus, the properly construed phrase is comprehensible to the Court and the jury as "transmitting [/ transmit] said digitized voice alert providing an automatic emergency announcement about said emergency situation to at least one wireless hand held device by targeting cellular towers only in the specified region."

## V.     CONCLUSION

Alert Media respectfully requests that the Court adopt its proposed claim constructions.

Dated: December 1, 2021　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　FISH & RICHARDSON P.C.

　　　　　　　　　　　　　　　　　　　　By: */s/ Neil J. McNabnay*
　　　　　　　　　　　　　　　　　　　　　　Neil J. McNabnay
　　　　　　　　　　　　　　　　　　　　　　mcnabnay@fr.com
　　　　　　　　　　　　　　　　　　　　　　Texas Bar No. 24002583
　　　　　　　　　　　　　　　　　　　　　　David B. Conrad
　　　　　　　　　　　　　　　　　　　　　　conrad@fr.com
　　　　　　　　　　　　　　　　　　　　　　Texas Bar No. 24049042
　　　　　　　　　　　　　　　　　　　　　　Collin J. Marshall
　　　　　　　　　　　　　　　　　　　　　　cmarshall@fr.com
　　　　　　　　　　　　　　　　　　　　　　Texas Bar No. 24109509

　　　　　　　　　　　　　　　　　　　　　　1717 Main Street, Suite 5000
　　　　　　　　　　　　　　　　　　　　　　Dallas, Texas 75201
　　　　　　　　　　　　　　　　　　　　　　(214) 747-5070 (Telephone)
　　　　　　　　　　　　　　　　　　　　　　(214) 747-2091 (Facsimile)

　　　　　　　　　　　　　　　　　　　　**ATTORNEYS FOR DEFENDANT**
　　　　　　　　　　　　　　　　　　　　**ALERT MEDIA, INC.**

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of the above and foregoing document has been served on December 1, 2021, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

<i>/s/ Neil J. McNabnay</i><br>
Neil J. McNabnay