**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| **VERNA IP HOLDINGS, LLC,** | |
| Plaintiff, | C.A. No. 6:21-cv-00422-ADA |
| v. | **JURY TRIAL DEMANDED** |
| **ALERT MEDIA, INC.,** | ██████████ |
| Defendant. | PUBLIC VERSION |
| **VERNA IP HOLDINGS, LLC,** | |
| Plaintiff, | C.A. No. 6:22-cv-00387-ADA |
| v. | **JURY TRIAL DEMANDED** |
| **ALERT MEDIA, INC.,** | ██████████ |
| Defendant. | PUBLIC VERSION |

**ALERT MEDIA, INC.'S**
**MOTION FOR EXCEPTIONAL CASE**

## TABLE OF CONTENTS

I.    NATURE AND STAGE OF THE PROCEEDING ................................................................. 2

II.   STATEMENT OF FACTS ................................................................................................... 6

      A.    The '938 Patent ........................................................................................................6

      B.    The '960 Patent ........................................................................................................8

      C.    The Accused Product ...............................................................................................9

III.  LEGAL STANDARDS .................................................................................................... 11

IV.   ARGUMENT ................................................................................................................... 12

      A.    This Case Stands Out from Other with Respect to the Substantive Strength
            of Verna's Litigating Position ................................................................................12

      B.    Verna Litigated an Unreasonable Manner. ............................................................14

      C.    Fees Sought ............................................................................................................18

V.    CONCLUSION ................................................................................................................ 18

**TABLE OF AUTHORITIES**

**Cases**                                                                                      **Page(s)**

*Blackbird Tech LLC v. Health In Motion LLC*,
    944 F.3d 910 (Fed. Cir. 2019)........................................................................11, 14

*Edekka LLC v. 3balls.com, Inc.*,
    No. 2:15-CV-541 JRG, 2015 WL 9225038 (E.D. Tex. Dec. 17, 2015) ................................17

*MarcTec, LLC v. J&J*,
    664 F.3d 907 (Fed. Cir. 2012)....................................................................................14

*Missed Call, LLC v. Freshworks, Inc.*,
    No. 1:22-739-CFC, Dkt. 21 (D. Del. Sept. 8, 2022) (setting an evidentiary hearing "to
    determine whether Mr. Ramey should be held in contempt or otherwise sanctioned for his
    failure to comply with this Court's August 25, 2022 order")...................................17

*NetSoc, LLC v. Chegg Inc.*,
    No. 18-CV-10262 (RA), 2020 U.S. Dist. LEXIS 232321 (S.D.N.Y. Dec. 10, 2020) .............17

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    572 U.S. 545 (2014)........................................................................................11, 12, 14

*SFA Sys. LLC v. Newegg Inc.*,
    793 F.3d 1344 (Fed. Cir. 2015).................................................................................14, 16

*Shipping & Transit, LLC v. Hall Enter. Inc.*,
    Case No. 16-06535-AG-AFM (C.D. Cal. Jul. 5, 2017) (filed as supplemental authority at DE
    51) ........................................................................................................................16

*Taurus IP, LLC v. DaimlerChrysler Corp.*,
    726 F.3d 1306 (Fed. Cir. 2013).................................................................................15

*Traxcell Technologies, LLC, v. Google LLC*,
    No. 6:21-CV-1312-ADA, 2022 U.S. Dist. LEXIS 149860 (W.D. Tex. Aug. 22, 2022).........17

*Traxcell Technologies, LLC v. Huawei Technologies USA Inc.*,
    No. 2:17-cv-00042-RWS-RSP, Dkt. 142 (E.D. Tex. Dec. 21, 2017).....................................17

*Traxcell Technologies, LLC v. Huawei Technologies USA Inc.*,
    No. 2:17-cv-00042-RWS-RSP, Dkt. 448 (E.D. Tex. Mar. 29, 2022).....................................17

*Verna IP Holdings, LLC v. BlackBerry Corp.*,
    Case No. 6:21-cv-01037 (W.D Tex.)........................................................................16

*Verna IP Holdings, LLC v. Eaton Corp.*,
    Case No. 6:21-cv-00849 (W.D. Tex.)........................................................................16

*Verna IP Holdings, LLC v. Everbridge, Inc.*,
　　Case No. 3:22-cv-00018 (E.D. Va.) ..................................................................16

*ZT IP, LLC v. VMware, Inc.*,
　　Civil Action No. 3:22-CV-0970-X, 2023 U.S. Dist. LEXIS 19165 (N.D. Tex. Feb. 6, 2023)
　　 ..........................................................................................................................17

**Statutes**

35 U.S.C. § 285 ................................................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 11 ...................................................................................................3

Alert Media is filing this motion under 35 U.S.C. § 285 seeking attorneys' fees in two related lawsuit, Case Nos. 6:21-cv-00422-ADA and 6:22-cv-00387-ADA.

This first lawsuit was frivolous from the day it was filed because Verna never alleged that the Accused Product practiced a key limitation of the Asserted Patent: converting a voice alert to more than one language. Alert Media quickly provided evidence and assurances that the Accused Product does not have this functionality. Verna did not respond. The Court issued a Markman ruling adverse to Verna regarding the limitation. Verna still did not act. Alert Media sent another letter reiterating how the evidence provided shows that infringement is impossible. Verna continued to ignore that the key limitation even existed. In short, Verna willfully turned a blind eye to the facts and pursued litigation for over a year with no basis whatsoever to pursue its claims. It took five months from Alert Media's first letter, during which Alert Media incurred substantial litigation expenses, before Verna finally agreed to dismiss the frivolous case.

Verna's subjective goal was apparently bad faith litigation to extract a nuisance settlement. Just days before Verna finally agreed that dismissal of the first case was proper, it filed a second suit against Alert Media on a related patent—apparently to keep pressure so that it could strong arm Alert Media into a settlement. This new case was no less frivolous. Fortunately, this second time, Verna agreed to dismiss the case more quickly than the first. But, even after conceding that Verna's position could not possibly be maintained, Verna insisted on dismissing its claims in both cases without prejudice despite binding authority preventing it from doing so because Alert Media was pursing an active counterclaim of non-infringement. This, too, was a transparent attempt to continue to hang the threat of litigation over Alert Media to extract a nuisance settlement. This Court held in favor of Alert Media in finding that "dismissal without prejudice is not appropriate in this case." (Dkt. 49 at 2.) Only after this, and nearly two years after filing the first case against

Alert Media, did Verna finally agree to dismiss all of its claims in both cases with prejudice. (6:21-cv-00422-ADA, Dkt. 50; 6:22-cv-00387-ADA, Dkt. 18.)

The totality of the circumstances of these cases demonstrates that this was an exceptional case both due to the utter lack of substantive strength of Verna's claims and the unreasonable manner in which the cases were litigated.

## I.   NATURE AND STAGE OF THE PROCEEDING

On April 27, 2021, Plaintiff Verna IP Holdings, LLC filed a lawsuit accusing Defendant Alert Media, Inc. of infringing U.S. Patent No. 8,265,938. (Dkt. 1.)[1] The '938 Patent is titled "Voice Alert Methods, Systems and Processor-Readable Media" and was filed on December 13, 2011.  Verna IP accuses Alert Media's emergency notification platform and services (the "Accused Product") of infringing claims 1–4, 6, 11–13, and 16–18 of U.S. Patent No. 8,265,938 (the "'938 Patent"). (Dkt. 1; Ex. 1 (Plaintiff's Infringement Contentions).) The Asserted Claims require "converting said digitized voice alert into more than one language from among a plurality of languages." ('938 Patent at cls. 1, 11, 18 ("convert").)

On August 13, 2021, Alert Media served its infringement contentions. In support for this limitation, it provided a screenshot to a marketing guide that an ███████████████████████ ██████████████████████████████████

---

[1] All docket citations are to 6:21-cv-00422-ADA unless otherwise noted.



(Ex. 1, Plaintiff's Infringement Contentions, pg. 9.) There was no argument or evidence showing that the Accused Product **converts** a digitized voice alert into more than one language.

On November 15, 2021, Alert Media sent Verna a letter requesting dismissal of the case identifying several reasons why infringement of the '938 Patent by the Accused Product was not possible.  (Ex. 2, Nov. 15, 2021 Letter from Conrad.) The letter explained, with documentary support, that "█████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████) Verna never responded to this letter, and the case proceeded to claim construction.

Following the claim construction hearing on February 11, 2022, the court issued a Claim Construction Order and Memorandum. (Dkt. 39; Dkt. 40.) In this order, the Court found that the preamble of the independent claims was liming, and that "automatically" has its "plain and ordinary meaning of without direct human control." (Dkt. 39.) The Court held that the use of

"automatically" in the preamble "requires automatically converting voice alerts to more than one language and automatically transmitting the voice alerts." (Dkt. 40 at 6.)

After the Markman order issued, Alert Media again reached out to Verna requesting dismissal of the case, pointing out again that ████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████

        ████████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ███████████████████████████████████

In  response,  ██████████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ████████████████████████████████

Rather than promptly dismissing this case and walking away, nearly a month later, on April 14, 2022, Verna filed a second lawsuit against Alert Media, asserting a related patent, U.S. Patent No. 10,282,960 (the "960 Patent"). (Case No. 6:22-cv-00387 ("Second Case").) The allegations in this new complaint suffered from similar deficiencies as with case for the '938 Patent with

additional issues identified in Alert Media's Motion to Dismiss. (6:22-cv-00387, Dkt. 6.) In an attempt to resolve this case without further expense for either party, on May 2, 2022, Alert Media quickly produced documents to demonstrate impossibility of Verna's infringement claims for this new lawsuit. (Ex. 7, May 2, 2022 Email from Poppell). However, Verna did not dismiss this second lawsuit, and Alert Media filed its Answer and Motion to Dismiss. (6:22-cv-00387, Dkt. 6; Dkt. 7.) Shortly after Alert Media filed its Motion to Dismiss, Verna filed an Opposed Motion for Dismissal with prejudice without conferring with Alert Media. (6:22-cv-00387, Dkt. 13.) Alert Media was not in fact opposed to this dismissal with prejudice. Then, on June 1, 2022, Verna filed an Amended Opposed Motion for Dismissal, this time requesting dismissal without prejudice. (6:22-cv-00387, Dkt. 15.) Yet again, Verna did not confer with Alert Media prior to filing. Alert Media filed its Opposition explaining that dismissal without prejudice was improper due to Alert Media's pending counterclaim for non-infringement but that Alert Media did not oppose dismissal with prejudice. (6:22-cv-00387, Dkt. 16.)

Only after filing the Second Case, Verna agreed on April 18, 2022 to drop infringement claims for the '938 Patent in the first case. On May 11, 2022, Verna filed an Opposed Motion to Dismiss but filed this dismissal as opposed because Verna would only agree to dismissal without prejudice despite Alert Media's active counterclaims. (Dkt. 45.) As such, Alert Media filed an Opposition explaining that Alert Media was opposed to dismissal without prejudice but agreed dismissal was proper with prejudice. (Dkt. 46.) On February 8, 2023, this Court agreed with Alert Media and found "that dismissal without prejudice is not appropriate in this case." (Dkt. 49 at 2.) It was only following this Courts Order that Verna finally agreed to dismiss Verna's claims with prejudice and Alert Media's counterclaims without prejudice as moot. (Dkt. 50.)

## II.    STATEMENT OF FACTS

### A.    The '938 Patent

The '938 Patent generally describes "broadcasting instant voice alerts to remote electronic devices automatically during times of emergencies or as a part of security monitoring systems." ('938 Patent at 1:40–44.) The applicants admitted that instant emergency broadcasting systems were known in the art before the '938 Patent. For example, the FCC's "'PLAN' Personal Localized Alerting Network" was already used as a network "for the transmission of local emergency services, Amber alerts, Presidential messages, government notices, etc." and was cited as prior art to the '938 Patent. (*Id.* at Cover, 19:17–20.) The applicants also acknowledged the existence of several patented and well-known methods using "instant push notification technology" to "push the alerts" from "cell towers to mobile telephones and other mobile electronic devices in the affected area." (*Id.* at 27:7–10, 27:28–28:12.) These emergency telecommunication functions were the platform for their idea—not what they claimed the invention to be.

PLAN "sends text only," a purported disadvantage for "those who are unable to look at their instant text alert such as when driving" or "those that are without a phone, who are reading the TEXT on their computers, and so forth." (*Id.* at 14:23–34.) As such, the applicants purportedly added "a voice alert" in multiple languages so "users can hear the message without doing anything." (*Id.* at 14:25–31; *see also, e.g., id.* at Title, Abstract.) This claimed idea of the '938 Patent, "if adapted to PLAN, would allow for actual voice alerts (e.g., digitized voice alert from the President, which the public would recognize) to be pushed through to mobile devices in communication with, for example, [a] network." (*Id.* at 27:18–23.) The supposed invention of the '938 Patent, in other words, is adding multilingual voice alerts to PLAN. (*Id.* at 27:18–27.) And the specification describes achieving this goal by using known "text-to speech engines" that were

6

already capable of "natural speech features" and "conversion in multiple languages." (*Id.* at 10:38–11:33.)

The '938 Patent's claims recite steps for providing voice messages as localized emergency alerts. Claim 1 is exemplary:

> 1. A method for ***automatically providing instant emergency voice alerts automatically*** to wireless hand held device users in a specified region, said method comprising:
>
> determining an emergency situation affecting a specified region and requiring emergency notification of said emergency situation to wireless hand held device users in said specified region;
>
> generating and converting a text message indicative of said emergency situation into a digitized voice alert;
>
> ***converting said digitized voice alert into more than one language from among a plurality of languages*** for broadcast of said digitized voice alert in consecutively different languages through said at least one wireless hand held device; and
>
> transmitting said digitized voice alert through specific towers of a cellular communications network in said specified region for distribution of an automatic emergency announcement about said emergency situation provided by said digitized voice alert to at least one wireless hand held device in communication with said specific towers of said cellular communications network in said specified region.

(*Id.* at Cl. 1 (emphasis added).) Figure 6 depicts the claimed steps as "method 440" and Figure 9 illustrates a "system 494" for executing the method. (*Id.* at 14:15–19, 16:20–32.)

Claim 1 is directed exclusively to the desired result of providing voice messages as localized emergency alerts. This is achieved by automatically determining an emergency situation affecting a specified region, automatically generating text messages indicative of the emergency situation detected, automatically converting this text message into a voice alert, automatically converting the voice alert into more than one language for broadcast of the alert in consecutively different languages, and automatically transmitting the voice alert through the cell towers in a

specified region. (*Id.* at Cl. 1.) The claimed steps were intended to "be utilized in the context of the PLAN system discussed above." (*Id.* at 27:1–3.)

Crucially, where the claims expand on the known functionality of PLAN is through the language conversion. Claim 1 recites the steps of "converting" a text alert into a voice alert and "converting" the voice alert into several languages. (*Id.* at Cl. 1.) Although these text conversion methods were known in the field, they were not implemented in PLAN.  (*See e.g., id.* at 10:38–11:33.)

### B.    The '960 Patent

The '960 Patent is from the same family as the '938 Patent. The '960 Patent also generally relates to providing "voice alerts automatically to remote electronic devices… [following] detect[ion] utilizing one or more sensors." ('960 Patent at Abstract.)

The '960 Patent's claims recite a method and system for providing instant voice alerts following a detection of an activity on a monitoring system. Claim 1 is exemplary:

1. A method for automatically providing instant voice alerts to remote electronic devices, said method comprising:

registering remote electronic devices to receive notifications via wireless data communications networks from a monitoring system including data files comprising digitized voice alerts;

generating and converting a text message indicative of an activity into a data file to be rendered on a remote electronic device as a digitized voice alert, wherein said activity comprises an activity detected at a premises utilizing at least one sensor via a monitoring system also located at the premises and connected to a packetized data network; and

transmitting said data file through the packetized data network for receipt by at least one remote electronic device that is registered to communicate remotely with the monitoring system and to receive messages over the packetized data network for rendering of the digitized voice alert from the data file and that communicates with said data network via wireless data communications, wherein the data file is processed at the at least one remote electronic device for an automatic audio announcement of said digitized voice alert through said at least one remote electronic device.

(*Id.* at Cl. 1 (emphasis added).)   The purported advance lies in the steps of generating and converting a digitized voice alert for remote devices that is created when a monitoring system detects an activity at its premises. (*Id.* at 2:1-62.)

### C.    The Accused Product

Alert Media provides emergency communication software that enables clients to provide mass notifications in the event of an emergency or other event. The Alert Media platform allows administrators to send emergency notifications to groups of individuals, and these notifications can be sent via email, text, voice, call, and app push. Alert Media's system requires an administrator to initiate the process of sending a notification. The below step-by-step process outlines the steps necessary to create and send a notification. In order to initiate the process, an administrator may use either the app or the web platform and press the "New Notification" button. After this, the ████████████████████████████████████████

████████████████████████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

(*See* Ex. 8, ALERT_0000001.)

The 



(*See* Ex 9, ALERT_0000183.) The documentation for the accused product explains that it █

███████████████████████████████████████████████████████████████

███████████████████████

████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

(Ex 9, ALERT_0000182.)

## III.   LEGAL STANDARDS

Section 285 of the Patent Act allows a district court, in an exceptional case, to award reasonable attorneys' fees to the prevailing party. 35 U.S.C. § 285. "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). An exceptional case under § 285 is "simply one that stands out from other with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.* "There is no precise rule or formula for determining whether a case stands out from others with respect to the substantive strength of a party's litigating position; instead, district courts may make this determination in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Blackbird Tech LLC v. Health In Motion LLC*, 944 F.3d 910, 915–16 (Fed. Cir. 2019) (quoting *Octane*, 572 U.S. at 554–55 (internal quotation marks and brackets omitted)).

Exceptionality need only be established by a preponderance. *Id.* at 557. In making a finding about exceptionality, the Court can consider the reasonableness of the winning party's litigation

tactics. "[A]n appellate court should review all aspects of a district court's § 285 determination for abuse of discretion." *Highmark*, 572 U.S. at 561.

## IV.    ARGUMENT

Despite multiple explanations from Alert Media, Verna's litigating positions remained objectively meritless over the year plus it asserted its claims. To maintain these implausible assertions, Verna ignored all facts, ignored the applicable case law, and ignored this Court's claim construction orders. In short, this case is exceptional under both avenues of Octane Fitness: the lack of substantive strength of Verna's litigating position and the unreasonable manner in which the case was litigated by Verna.

### A.    This Case Stands Out from Other with Respect to the Substantive Strength of Verna's Litigating Position.

Despite multiple warnings from Alert Media, Verna maintained claims despite clear evidence that the Accused Product cannot possibly infringe any of the asserted claims of the '938 Patent because it does not convert voice alerts to more than one language.

Alert Media's accused emergency alert system never "convert[s] said digitized voice alert into more than one language from among a plurality of language" as required by each independent claim. ('938 Patent at Cls. 1, 11, 18.) Every asserted claim requires this functionality either expressly, as is the case with the independent claims, or through claim dependency as with dependent claims 2–4, 6, 12, 13, 16, and 17. The Court provided further clarity with respect to this element explaining that the claims require "automatically converting voice alerts to more than one language…." (Dkt. 40 at 6.) Despite this, at no point did Verna ever allege that the Accused Product converts a voice alert into multiple languages. Nor could it. The Accused Product does not convert any text message into any other language, automatically or not.

Verna never had a legal or factual basis to support its claims. None of the public materials Veran cited suggested that it had a language conversion capability. Alert Media's technical documentation for the Accused Product produced early in this case also showed that the system **cannot** convert a message into another language. For example, in a guide for use of the native language voice notification, Alert Media clearly █████████████████████████████ ████████████████████████████████████████████████████████████████████████ ██████████████████████████

████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████

The Native Language feature of the Accused Product is only ██████████████████████████ ████████████████████████████████████████████████████████████████████████

(Ex. 9, ALERT_0000181.) Nothing in the system allows for translation to a different language, let alone to multiple languages as the patent requires. For example, a message written by a user in Spanish can be read in Spanish, with the accent of a Spanish speaker, if this is selected through the Advanced View. No feature allows the system to convert an English text message into the Spanish language, let alone multiple languages. As shown below, the message is sent only in the original language, and there is no option to convert the message into another language.

13



(*See* Ex. 8, ALERT_0000001.)

**B.      Verna Litigated an Unreasonable Manner.**

Verna's litigation conduct also renders this case "exceptional." A court "must consider whether the case was litigated in an unreasonable manner as part of its exceptional case determination." *SFA Sys. LLC v. Newegg Inc.*, 793 F.3d 1344, 1349 (Fed. Cir. 2015). Litigation misconduct "provides a separate and independent basis supporting" a court's determination that a case is exceptional. *Id.* at 1350 (quoting *MarcTec, LLC v. J&J*, 664 F.3d 907, 920–21 (Fed. Cir. 2012)). "[I]t is well-established that litigation misconduct and "unprofessional behavior may suffice, by themselves, to make a case exceptional under § 285." *MarcTec*, 664 F.3d at 919 (quoting *Rambus Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1106 (Fed. Cir. 2003)). This prong focuses on conduct that—"while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees." *Octane*, 572 U.S. at 555. A court must consider the "totality of the circumstances." *Blackbird*, 944 F.3d at, 915–16 (quoting *Octane*, 572 U.S. at 554–55).

The totality of the circumstances demonstrates that Verna filed serial lawsuits against Alert Media in bad faith for the improper purpose of extracting a nuisance settlement by forcing Alert Media to incur unnecessary legal expenses for frivolous claims. Verna's knowledge that the claims lack legal basis can be seen from its very first articulation of its infringement theory in the Complaint, which makes no allegation that Alert Media's product converts a digitized voice alert into more than one language as the claim requires. (Dkt. 1, pg. 7.) If Verna had a good faith basis to allege that the Accused Product converts a digitized voice alert into more than one language, it would have alleged as much. Beginning on November 15, 2021, after receiving Verna's infringement contentions, Alert Media repeatedly provided Verna with clear, extensive evidence that each and every of Verna's assumptions about the facts are meritless, but Verna ignored the facts and continued to pursue its frivolous claims. (*See* Ex. 2, Nov. 15, 2021 Letter from Conrad.)

Verna's response to Alert Media's efforts show deliberate disregard for the truth.  Verna ignored the first letter entirely. Its response to the second letter was terse, ignored material claim elements, and raised a brand new theory, which Alert Media quickly disproved with evidence. Confronted with this evidence, however, Verna merely stated that it would consider it.

Even if Verna initially believed that there were questions in this case that that raised plausible legal or factual dispute, any assumptions it relied upon have long been contradicted by evidence. Verna has a duty to continually assess the soundness of pending infringement claims, and by choosing to not dismiss the claims after the Court's Claim Construction Order for almost three months despite several demands from Alert Media, Verna violated this duty. *See Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1328 (Fed. Cir. 2013) (explaining "the rule that a party cannot assert baseless infringement claims and must continually assess the soundness of pending infringement claims, especially after an adverse claim construction."). Even when Verna

did dismiss the claims, it moved to dismiss the claims without prejudice despite Alert Media's active counterclaims, thereby preserving Verna's ability to bring suit again. In doing this, Verna forced Alert Media to expend further resources to oppose Verna's motion even after Verna had decided their claims were not sufficient to continue pursuing.

In addition to this, as explained above, prior to dismissing this case, Verna filed the Second Case asserting a related patent. This sequence of events demonstrates that Verna finally acknowledged the first suit was meritless but still wanted to apply pressure to Alert Media to extract a nuisance settlement. This is not a new approach for Verna. In fact, between the filing of the two cases against Alert Media, Verna asserted these patents against three other defendants and all of the cases were terminated within five months. *See Verna IP Holdings, LLC v. BlackBerry Corp.*, Case No. 6:21-cv-01037 (W.D Tex.); *Verna IP Holdings, LLC v. Everbridge, Inc.*, Case No. 3:22-cv-00018 (E.D. Va.); *Verna IP Holdings, LLC v. Eaton Corp.*, Case No. 6:21-cv-00849 (W.D. Tex.). Through this, Verna has demonstrated a repeated pattern of filing patent infringement actions for the sole purposed of forcing settlement. The Federal Circuit has explained that this is relevant to determining an exceptional case. *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1350 (Fed. Cir. 2015) ("[A] pattern of litigation abuses characterized by the repeated filing of patent infringement actions for the sole purpose of forcing settlements, with no intention of testing the merits of one's claims, is relevant to a district court's exceptional case determination under § 285."); *see also Shipping & Transit, LLC v. Hall Enter. Inc.*, Case No. 16-06535-AG-AFM (C.D. Cal. Jul. 5, 2017) (filed as supplemental authority at DE 51) (finding "a compelling need for deterrence and to discourage exploitative litigation" by this same Plaintiff after finding a "clear pattern of serial filings with the goal of obtaining quick settlements at a price lower than the cost of litigation and the intent to litigate even when Plaintiff should have realized it had a weak litigation

position"); *Edekka LLC v. 3balls.com, Inc.*, No. 2:15-CV-541 JRG, 2015 WL 9225038, at *4 (E.D. Tex. Dec. 17, 2015) ("The Court finds that it is reasonable to conclude that [plaintiff] acted with the goal of 'exploiting the high cost to defend complex litigation' to extract 'nuisance value settlement[s]' from defendants.").

This Court and other courts across the country have faulted Verna's counsel for bringing exceptional cases and for failure to comply with court orders. *See Traxcell Technologies, LLC v. Huawei Technologies USA Inc.*, No. 2:17-cv-00042-RWS-RSP, Dkt. 142 at 6 (E.D. Tex. Dec. 21, 2017) (sanctioning Traxcell for its failure to comply with Local Patent Rules); *Traxcell Technologies, LLC v. Huawei Technologies USA Inc.*, No. 2:17-cv-00042-RWS-RSP, Dkt. 448 at 6 (E.D. Tex. Mar. 29, 2022) (finding "case to be exceptional under § 285 after the Court denied Plaintiff's motion for leave to file the out-of-time objections to the claim construction"); *Traxcell Technologies, LLC, v. Google LLC*, No. 6:21-CV-1312-ADA, 2022 U.S. Dist. LEXIS 149860, at *4 (W.D. Tex. Aug. 22, 2022) ("Most troublesome here is that the same counsel representing this same plaintiff has already been chastised by this Court for his repeated failure to file in a timely manner."); *see also ZT IP, LLC v. VMware, Inc.*, Civil Action No. 3:22-CV-0970-X, 2023 U.S. Dist. LEXIS 19165 (N.D. Tex. Feb. 6, 2023) (finding case exceptional and noting that Mr. Ramey was previously found to have "conducted absolutely no pre-filing investigation" and thus "should have been aware enough to recognize the importance of scrutinizing pre-filing materials (or conducting an adequate pre-filing investigation in general) before bringing suit"); *Missed Call, LLC v. Freshworks, Inc.*, No. 1:22-739-CFC, Dkt. 21 at 3 (D. Del. Sept. 8, 2022) (setting an evidentiary hearing "to determine whether Mr. Ramey should be held in contempt or otherwise sanctioned for his failure to comply with this Court's August 25, 2022 order");[2] *NetSoc, LLC v.*

---

[2] Before a decision could be reached, the case was stayed pending a mandamus petition.

*Chegg Inc.*, No. 18-CV-10262 (RA), 2020 U.S. Dist. LEXIS 232321 (S.D.N.Y. Dec. 10, 2020) (finding case exceptional where Mr. Ramey took over three months to address numerous errors in claim charts, including incorrect patent numbers).

In sum, Verna ignored the facts available to it when it brought these two lawsuits and continued to repeatedly ignore the facts that Alert Media highlighted in continuing to pursue its meritless claims for almost a year in the first case. These actions evidence Verna's bad faith and the unreasonable manner of this litigation.

### C.      Fees Sought

As explained in detail above, this case is factually and legally meritless for several reasons. It should never have been filed. Verna knew the cases were meritless when it was were filed, and certainly knew from Alert Media's letters, attached as Exhibit 2 and 3. Given the totality of the circumstances, and to deter Verna and other litigants from making similar baseless claims in the future, Alert Media respectfully request that the Court grant at least the ███████ in fees Alert Media necessarily incurred as a result of this civil action over the course of the litigation related to the '938 Patent, and any further fees it incurs to prosecution of this motion. Ex. 11. Alert Media also requests that the Court award the ███████ in fees Alert Media incurred during the pendency of this action in defending the second case brought by Verna given the related nature and exceptional nature of this pair of cases. Ex. 12.

## V.      CONCLUSION

For the foregoing reasons, Alert Media respectfully requests that the grant this motion for fees under 35 U.S.C. § 285.

Dated: March 27, 2023

Respectfully submitted,

FISH & RICHARDSON P.C.

By: */s/ Neil J. McNabnay*
    Neil J. McNabnay
    mcnabnay@fr.com
    Texas Bar No. 24002583
    David B. Conrad
    conrad@fr.com
    Texas Bar No. 24049042

    1717 Main Street, Suite 5000
    Dallas, Texas 75201
    (214) 747-5070 (Telephone)
    (214) 747-2091 (Facsimile)

**ATTORNEYS FOR DEFENDANT
ALERT MEDIA, INC.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 27, 2023, the foregoing document was filed electronically under seal in compliance with Local Rule CV-5(a) and was served to counsel of record via electronic mail pursuant to Local Rule CV-5.2(e).

    */s/ Neil J. McNabnay*
    Neil J. McNabnay